SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**GREGORY R. NYHUS, OSB # 913841**
Assistant United States Attorney
greg.r.nyhus@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:26-cr-00127-AR** |
| **v.** | |
| | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **MELANIE BREEANNE RIVAS,** | |
| **Defendant.** | |

**Introduction**

Defendant appears before the Court for sentencing following her entry of a plea of guilty

to Assault on a Federal Officer, a Class A misdemeanor. A sentence of time served and one year

of supervised release is sufficient under 18 U.S.C. § 3553(a).

/////

/////

/////

**Government's Sentencing Memorandum**                                              **Page 1**

**Factual Background**

     **A.**     **The Charges**

On June 4, 2026, the defendant waived indictment and pled guilty to a single-count Information which charged that on or about October 29, 2025, in the District of Oregon, the defendant Melanie Breeanne Rivas, did forcibly assault Adult Victim 1 (AV1) by intentionally threatening a person designated as a federal officer under 18 U.S.C. § 1114, while AV1 was engaged in, and on account of the performance of, AV1's official duties, by operating her vehicle in a manner which caused a reasonable apprehension of immediate bodily harm to said officer; in violation of 18 U.S.C. § 111(a)(1).

The maximum sentence is up to 1 year imprisonment, a fine of $100,000, one year of supervised release, and a $25 fee assessment.

     **B.**     **The Offense Conduct**

According to official reports, on October 29, 2025, Adult Victim 1 ("AV1"), a Federal Protective Service officer, was driving an assigned marked police vehicle to the Command 5 Portland Office, located at 1220 Southwest Third Street in Portland, Oregon. While en route, AV1 observed a vehicle, later determined to be driven by the defendant, accelerate alongside the left side of AV1's vehicle.

The defendant made an obscene gesture toward AV1 and jerked her vehicle toward AV1's vehicle. AV1 slowed down, and the defendant accelerated, pulled in front of AV1, and abruptly slammed on her brakes. This caused AV1 and other nearby drivers to slow almost to a complete stop to avoid a collision. The defendant then slammed on her brakes four or five additional times, causing AV1 to brake repeatedly to avoid striking her vehicle.

**Government's Sentencing Memorandum**          **Page 2**

A review of defendant's phone indicated that, while she was driving, she was actively texting about "road raging" AV1 and photographing the FPS vehicle while she was either in front of or behind it.

AV1 requested backup and initiated a traffic stop. AV1 observed the defendant throw her arms in the air before moving her vehicle to the shoulder and stopping. Using the public address system, AV1 directed the defendant to lower the driver's window and turn off the vehicle. When AV1 contacted the defendant, she asked, "Why are you pulling me over?" AV1 advised her that she had been stopped for reckless driving. The defendant replied, "Nope! I'm not doing it. I'm a lawyer and need to be in court."

The defendant continued moving inside the vehicle. AV1 directed her to exit, but she did not comply. After she eventually exited, she refused to place her cell phone and keys on the trunk of her vehicle as instructed. AV1 grabbed the defendant's wrist. The defendant pulled her arm away from AV1 and stated, "Nope, not happening today."

During the encounter, the defendant's arm struck AV1 in the face, dislodging AV1's sunglasses and earpiece. AV1 again grabbed the defendant's wrist, and the defendant threw herself to the ground. Defense counsel disputes the accuracy of this statement. The defendant was placed in handcuffs. Oregon State Police troopers arrived on scene and stood near the defendant.

The defendant was transported to Providence Hospital in Oregon City, Oregon, after reporting that she had hit her head. Hospital staff evaluated her and determined that she had not suffered a head injury. As noted in defense counsel's attached letter, the defendant underwent a CT scan, which was negative for hemorrhaging or other head injury. During post-arrest medical care, the defendant vomited and was treated in the emergency department with medication for

**Government's Sentencing Memorandum**                                           **Page 3**

nausea and anxiety. She was diagnosed with a contusion to her left forearm. She was subsequently transported to the Multnomah County Detention Center.

### C.    The Plea Agreement

Defendant's plea of guilty was pursuant to a plea agreement made under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure.  Defendant may not withdraw any guilty plea or rescind this plea agreement if the Court does not follow the agreements or recommendations of the parties.

**Guideline Application**

The parties agree that the Court must first determine the applicable advisory guideline range, then determine a reasonable sentence considering that range and the factors listed in 18 U.S.C. § 3553(a).

The parties agree that defendant's relevant conduct, pursuant to USSG §§ 1B1.9 and 2A2.4, imposes a base offense level of 10. The parties agree that defendant does not qualify for reductions under U.S.S.G. §4C1.1. Following a 2-level reduction for acceptance of responsibility, as indicated below, the total offense level is 8.

Defendant has fully admitted and accepted responsibility under USSG § 3E1.1 for her unlawful conduct and is entitled to a two-level reduction for acceptance of responsibility.

**Sentencing Recommendation**:

It is important to recognize that Ms. Rivas used her vehicle in a menacing and dangerous manner—effectively as a weapon—to intimidate and harass a person whom she mistakenly believed was associated with another federal agency. That Ms. Rivas believed it permissible to conduct herself in this manner toward a law enforcement officer demonstrates an alarming lack of judgment and disregard for the safety of others. Although the offense may not have involved

**Government's Sentencing Memorandum**                                          **Page 4**

physical contact, it was nonetheless an assault—not merely a driving offense. The absence of physical contact does not diminish either the assaultive nature of Ms. Rivas's conduct or its seriousness.

A.      The government recommends a sentence at the low end of the guideline calculation established by the Court, followed by one year of supervised release, 15 hours of community service, and a $25 fee assessment.

B.      The parties have agreed that, during the term of supervision, and as a condition thereof, the parties agree that defendant is prohibited from entering the area surrounding the Immigration and Customs Enforcement Building in Portland Oregon. Defendant is specifically prohibited from entering the area bounded by South Gaines Street to the North; South Boundary Street to the South; Southwest Terwilliger to the West; and the Willamette River to the East. Defendant may use I-5 to transit the exclusion area so long as defendant does not depart the freeway or stop within the exclusion area.

**Conclusion**

Based on the foregoing, the government urges the Court to impose the recommended sentence of time served, one year of supervised release, and 15 hours of community service .
Dated: July 9, 2026.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney


*/s/ Gregory R. Nyhus*
GREGORY R. NYHUS, OSB # 91384
Assistant United States Attorney